OPINION
Defendant-appellant/cross-appellee Harold F. Bauer (hereinafter "appellant") appeals the July 31, 1997 Judgment Entry/Decree of Divorce of the Fairfield County Court of Common Pleas, Domestic Relations Division, which ordered appellant to pay plaintiff-appellee/cross-appellant Betty R. Bauer (hereinafter "appellee") $2,200 per month as spousal support. Appellee cross-appeals the same Judgment Entry/Decree of Divorce which places certain conditions upon her continued receipt of spousal support. Appellee also cross-appeals the trial court's failure to issue a distributive award and the trial court's awarding her only $10,000 of her attorney fees.
 STATEMENT OF THE FACTS AND CASE
Appellant and appellee were married on April 20, 1973. One child, a son, was born as issue of this marriage. The child is now emancipated.
On March 17, 1996, appellee filed a complaint for divorce in the Fairfield County Court of Common Pleas, Domestic Relations Division. On April 2, 1996, appellant filed an answer and counterclaim for divorce. The trial court issued temporary orders on May 29, 1996. The matter proceeded to trial before Judge S. Farrell Jackson on June 2 and 3, 1997. On July 31, 1997, the trial court issued a Judgment Entry/Decree of Divorce. Thereafter, an Amended Judgment Entry/Decree of Divorce was journalized on October 9, 1997, which only addressed issues of implantation of the trial court's July 31, 1997 decision.
Pursuant to the Judgment Entry/Decree of Divorce, appellee received approximately $68,000 in liquid and semi-liquid cash assets. In addition, appellee received approximately $97,000 in unincumbered real estate. Specifically, appellee was granted all rights, titles, and interests in the properties located at 270 Beck Road, Lancaster, Ohio; 1671-3 E. Whittier St., Columbus, Ohio; and 1753-1755 S. 8th Street, Columbus, Ohio.
The Judgment Entry/Decree of Divorce also awarded appellee spousal support in the amount of $2,200 a month plus poundage. The trial court ordered the spousal support to continue until the first occurrence of any of the following events:
A. August 31, 2006;
B. Appellee's death;
C. Appellee's remarriage;
 D. Appellee's cohabitation with an unrelated adult male, not her spouse.
The trial court retained subject matter jurisdiction over the issue of spousal support.
Appellant, who is employed in a management position with Union Tools, Inc., receives an average annual gross base salary of $52,914. In 1997, appellant's annual gross base salary was $53,913. At the end of the Company's fiscal year each July 31, appellant receives an annual bonus based upon Union Tools' performance during that fiscal year. Appellant's three-year average annual gross bonus was $7,814. In 1996, his annual gross bonus was $8,193.
As part of the Judgment Entry/Decree of Divorce, appellant received all right, title, and interest in the property located at 22333 Bunker Hill Road, Lancaster, Ohio, which generates $175 per month in rental income. In addition, appellant received the former marital residence, which generates $70 per month in rental income from a caretaker's shack located on the property. From these two properties, appellant receives a combined rental income of $245/month, excluding expenses.
After taxes, appellant receives a monthly wage of $3,426.10. From this amount, $89.01 are deducted for life, disability, and medical insurance. Additional deductions include a monthly 401 (k) savings deduction of $134.81 as well as a $2/month garage fee, for a total of $225.82. Appellant's net monthly paycheck is $3,200.
It is from the July 31, 1997 Judgment Entry/Decree of Divorce appellant appeals raising the following assignments of error:
 I. THE COURT ERRED AS A MATTER OF LAW IN ORDERING SPOUSAL SUPPORT WITHHELD FROM APPELLANT'S MONTHLY INCOME WHICH EXCEEDS WITHHOLDING LIMITS ESTABLISHED BY OHIO AND FEDERAL LAW.
 II. THE COURT ERRED AND ABUSED ITS DISCRETION IN ORDERING SPOUSAL SUPPORT, WHICH TAKES AN UNREASONABLE PROPORTION OF APPELLANT'S INCOME AND IS IN EXCESS OF HIS ABILITY TO PAY.
 III. THE COURT ERRED AND ABUSED ITS DISCRETION IN ORDERING APPELLANT TO PAY $10,000.00 OF APPELLEE'S ATTORNEY FEES, WHERE APPELLEE HAS SUFFICIENT INDEPENDENT FINANCIAL ABILITY TO PAY HER OWN ATTORNEY FEES.
Appellee cross-appeals from the same, raising the following assignments of error:
 CROSS-APPEAL I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY MAKING THE SPOUSAL SUPPORT AWARD AUTOMATICALLY TERMINABLE UPON COHABITATION.
 II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ISSUING A DURATIONAL SPOUSAL SUPPORT AWARD.
 III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ARBITRARILY CHOOSING AN ARTIFICIAL DATE UPON WHICH SPOUSAL SUPPORT SHALL TERMINATE.
 IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY NOT ISSUING A DISTRIBUTIVE AWARD BASED UPON CROSS/APPELLEE'S FINANCIAL MISCONDUCT AND DISSIPATION OF MARITAL ASSETS.
 V. THE TRIAL COURT ERRED AND ABUSED IT DISCRETION BY ONLY AWARDING CROSS/APPELLANT $10,000 IN ATTORNEY FEES.
 APPEAL II
In his second assignment of error, appellant contends the trial court abused its discretion in ordering spousal support which appropriates an unreasonable proportion of his income and exceeds his ability to pay.
A review of a trial court's decision relative to spousal support is governed by an abuse of discretion standard. Cherry v.Cherry (1981), 66 Ohio St.2d 348. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case subjudice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
Pursuant to R.C. 3105.18(C)(1), trial courts are to consider certain factors in making determinations of spousal support:
3105.18 Award of spousal support; modification.
 (C) (1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
(a) The income of the parties, from all sources * * *;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (I) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
Further, trial courts are governed by the standard and guidelines imposed by the Ohio Supreme Court in Kunkle v. Kunkle
(1990), 51 Ohio St.3d 64, paragraph one of the syllabus:
 Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.
The trial court ordered spousal support as follows:
 8. Spousal Support: Effective June 1, 1997, Defendant shall pay to Plaintiff spousal support/alimony in the amount of $2,200 per month as and for spousal support. The payments will be by payroll withholding and should include additional amounts for poundage. Therefore, the Defendant's monthly obligation, including poundage, shall be $2,244 per month. Said payment shall continue until the first occurrence of the following events:
A. August 31, 2006;
B. The Plaintiff's death;
C. The Plaintiff's remarriage;
 D. The Plaintiff's cohabitation with an unrelated adult male, not her spouse.
 However, the Court shall maintain subject matter jurisdiction over the issue of spousal support. There is an arrearage of spousal support owing from the Defendant to the Plaintiff in the amount of $ 0 
as of 6/1 , 1997. The Defendant will become current in his obligation to pay spousal support on or before the 60th day of the effective date of this Judgment Entry.
 Further, the spousal support paid herein shall be deductible from the Defendant's income, per sec. 71 of the Internal Revenue Code, included in the income of the Plaintiff per sec. 61 of the Internal Revenue Code.
See, Judgment Entry/Decree of Divorce.
The record reveals appellant's net monthly income is $3,445.00, while his monthly living expenses total $2,462.00. Although facially the aforementioned spousal support award appears to place a strain on appellant's ability to meet his monthly living expenses, we do not find the trial court abused its discretion in fashioning said award. Upon review of the record, it is clear the trial court considered the relevant factors set forth in R.C. 3105.18(C)(1). Accordingly, appellant's second assignment of error is overruled.
 I
In his first assignment of error, appellant argues the trial court erred in ordering the withholdings from his monthly income for spousal support payments in excess of the withholding limits established by Ohio and Federal law. We agree.
We find the trial court's ordering an amount withheld from appellant's wages which constitutes over 60% of appellant's monthly income clearly exceeds the withholding limits imposed by R.C. 3113.21(D) and Section 1673 (b), Title 15, U.S. Code, and is erroneous. Accordingly, we vacate that portion of the Judgment Entry/Decree of Divorce and remand this issue to the trial court to determine, pursuant to this opinion, a modification of appellant's wage withholdings for spousal support to comply with State and Federal withholding limits.
Appellant's first assignment of error is sustained.
 III
In his third assignment of error, appellant maintains the trial court abused its discretion in ordering appellant to pay $10,000 of appellee's attorney fees.
A trial court's determination to grant or deny a request for attorney fees will not be disturbed absent an abuse of discretion.Motorists Mut. Ins. Co. v. Brandenburg (1995), 72 Ohio St.3d 157. The trial court ordered appellant to pay $10,000 of appellee's attorney fees. In its July 3, 1997 Memorandum Entry, the trial court explained:
 The attorney fees of the parties were discussed in detail and each party has expended nearly the same with a total of over $20,000 for each party. The defendant has caused some of the extraordinary fees because of all the financial investigations that were done and it is clear that defendant is better able to pay his attorney and he should pay a reasonable amount to compensate her attorney for his extra effort required and to insure that plaintiff did have adequate counsel so the defendant is ordered to Stebelton Aranda on the plaintiff's account $10,000 to partially cover her attorney expenses. Said sum is to be paid in full within 45 days after the final entry is filed.
 See, Memorandum Entry (Emphasis added).
In light of the fact appellant's actions caused appellee to incur additional attorney fees and upon review of the entire record, we find the trial court did not abuse its discretion in ordering appellant to pay a portion of those fees.
Appellant's third assignment of error is overruled.
 CROSS-APPEAL
In her first assignment of error, appellee submits the trial court abused its discretion in ordering the spousal support award automatically terminated upon appellee's "cohabitation with an unrelated adult male, not her spouse".
The applicable standard of review is abuse of discretion, which is set forth, supra.
In support of her position that a trial court may not order an award of spousal support subject to automatic termination upon cohabitation, appellee relies on Stevens v. Stevens (1986),23 Ohio St.3d 115. In Stevens, the Ohio Supreme Court stated:
 Because [the award of spousal support] was made subject to automatic termination in the event that appellant lived "in a state of concubinage" and because the trial court did not retain any jurisdiction to modify the award had this occurred, it was error to limit the award in this manner.
 Id. at 122.
In the case sub judice, the trial court retained subject matter jurisdiction over the issue of spousal support. Although the trial court in Stevens did not reserve jurisdiction, we do not find such distinction to be critical. We believe the rational expressed in Stevens that cohabitation should not be grounds for automatic termination of a spousal support award, but rather a factor which "may be considered in a subsequent modification proceeding in so far as it is relevant to the issues of continued need for such alimony and the amount", should apply even when a trial court retains jurisdiction over the issue of spousal support. Id. at 121-122 (Citation omitted).
Based upon the foregoing reasons, appellee's first assignment of error is sustained.
 II III
Since appellee's second and third assignments of error are interrelated, we shall address them together. Appellee contends the trial court abused its discretion in ordering a durational spousal support award and in arbitrarily choosing the artificial date of August 31, 2006 on which to terminate the award.
The applicable standard of review is abuse of discretion, which is set forth, supra.
In her Brief to this Court, appellee argues that a non-durational spousal support award was appropriate due to the long duration of the marriage. In support of her position, appellee relies on Spahr v. Spahr (June 28, 1993), Fairfield App. No. 34-CA-1992, unreported, in which the Tenth Appellate District, sitting by assignment in the Fifth Appellate District, found the trial court erred in ordering "automatic reductions in and [the] eventual termination of" the spousal support award. Id. The Spahr
court stated, "Our finding that a significant, ongoing spousal support is needed in the case is consistent with the most recent guidance from the Supreme Court of Ohio in Kunkle v. Kunkle
[Citation omitted], and with R.C. 3105.18." Id. Specifically, the Spahr court cited paragraph one of the syllabus of Kunkle,supra, which is set forth in its entirety, supra.
 Spahr involved a marriage of twenty-nine years. Id. At the time of the divorce, "Ms. Spahr was suffering from bipolar disorder, which at various times affected her intellectual functioning." Id. She was working only part-time and had no prospects for full-time employment. Id.
Appellee asserts Spahr and the instant action are analogous, and, as such, a non-durational spousal support order is mandated. In particular, appellee emphasizes the "Except in cases involving a marriage of long duration" language of paragraph one of the syllabus of Kunkle, supra. Appellee asks us to interpret this phrase, when read in conjunction with the entire paragraph, to require the converse, i.e., in a marriage of long duration, an award of spousal support should not terminate. This proposition of law cannot be read into Kunkle, supra. Had the Supreme Court wanted the Kunkle decision to stand for the inverse of the proposition of law set forth in paragraph one of the syllabus, the Court would have clearly articulated such intent. Accordingly, we do not find the trial court was required to order a non-durational spousal support award. Nor do we find the trial court abused its discretion in ordering a durational award.
Furthermore, with respect to appellee's argument that the trial court arbitrarily chose the artificial date of August 31, 2006, we note the record reveals on September 1, 2006, appellee will begin to receive $481.40/month, which represents her share of appellant's retirement income from Union Tools. In Spahr, the trial court ordered termination of the spousal support award upon the retirement of either party. Id. However, the trial court did not award Ms. Spahr a portion of Judge Spahr's retirement. Id.
As such, Spahr is clearly distinguishable from the issue at bar.
In light of the change in the parties' financial situations commencing September 1, 2006, the termination date of August 31, 2006, is neither arbitrary nor artificial. Accordingly, we find the trial court did not abuse its discretion in setting August 31, 2006, as the termination date for spousal support.
Appellee's second and third assignments of error are overruled.
 IV
In her fourth assignment of error, appellee asserts the trial court abused its discretion in failing to issue a distributive award based upon appellant's financial misconduct and dissipation of marital assets.
In its July 3, 1997 Memorandum Entry, the trial court addressed the issue of appellant's alleged financial misconduct. The trial court made the following observations and findings:
 Much argument was made that defendant had misappropriated assets, marital or his own and that this has deprived plaintiff of property or the ability of defendant to adequately provide her with spousal support.
 The court has carefully reviewed the testimony and the exhibits and, yes, large amounts of cash were handled and expended by the parties and, yes, the bookkeeping records are not clear but on the other hand 1) Betty Bauer kept the checkbook and paid the bills 2) Betty Bauer said she looked up stock values but didn't understand what they meant 3) Someone (no records) was buying the gold coins and bulk silver 4) Someone (no records) was buying the guns contained in the gun collection; and, 5) Little evidence was shown as to how taxes, everyday living expenses, house repairs and utilities were paid by the parties.
 The court is not convinced there was any pattern to the spending or any effort by either spouse to conceal assets over the past six or seven years or to expend any assets without receiving full value.
 It is, therefore, the finding of the court that the evidence is not clear that defendant did defraud plaintiff or conceal assets or intentionally or wrongfully dissipate marital or personal assets.
As the trier of fact, the trial court was free to believe any, all, or none of the testimony of the parties regarding the funds appellant allegedly misappropriated. If the trial court chose to believe that appellant used the money for marital debts, which it apparently did, the court was not required to find appellant had engaged in financial misconduct.
Upon our review of the record, we find the decision not to find financial misconduct by either party is not against the manifest weight of the evidence. Accordingly, we find the trial court did not abuse its discretion in failing to issue a distributive award to appellee.
Appellee's fourth assignment of error is overruled.
 V
In her fifth assignment of error, appellee argues the trial court abused its discretion in awarding her only $10,000 in attorney fees.
As noted, supra, a trial court's determination to grant or deny a request for attorney fees will not be disturbed absent an abuse of discretion. Motorists Mut. Ins. Co. v. Brandenburg,supra. In its Memorandum Entry, the trial court found the sum of $10,000 represented a reasonable amount with which to compensate appellee's attorney for the extra efforts taken as a result of the financial investigations of appellant. Appellee incurred just under $18,000 in attorney fees. We find the trial court did not abuse its discretion in awarding appellee $10,000 in attorney fees, which represents more than half of the total fees she incurred in the proceedings.
Appellant's fifth assignment of error is overruled.
The Judgment Entry of the Fairfield County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part and remanded to the trial court for further proceedings in accordance with law and this opinion.
By: Hoffman, J., Farmer, P.J. and Reader, J. concur.
 JUDGMENT ENTRY
CASE NO. 97CA53
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Fairfield County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part and remanded back to the trial court for further proceedings in accordance with the law and our opinion. Costs assessed to appellant.