DECISION.
Defendants-appellants A. Graves Williams, Jr., Robert E. Griffin, A. Graves Williams, III, Elroy Bourgraf, Raymond F. Arbaray, Sandra Mongold, and Robert Riddell (the "appellant officers and directors") appeal from the trial court's declaration denying them reimbursement under a directors' and officers' liability policy ("DO policy") issued by plaintiff-appellee Cincinnati Insurance Company ("CIC") for losses they incurred in defending and settling shareholder suits filed against them. In a cross-appeal, CIC claims the trial court erred in denying its request for attorney fees incurred in the litigation. Because the trial court's determination that the settlements reached in the underlying litigation for which the appellant officers and directors sought coverage were predicated upon claims asserted against them in their personal capacities and not in their corporate capacities with the Irwin Company, and because the trial court did not abuse its discretion in denying the award of fees as further relief under the Declaratory Judgment Act, we affirm the judgments of the trial court.
 Facts
The Irwin Company was a closely held corporation engaged in making power tool accessories. Many of its 150 shareholders were employees and relatives of former employees. Because its stock was not publicly traded and thus not readily marketable, Irwin had an informal buy-back policy. When feasible, an employee's stock would be purchased by the company at or below book value. After discussions with appellant A. Graves Williams, Jr., Irwin's chief executive officer and a major company shareholder, two groups of shareholders sold their shares to the company treasury for twenty-eight dollars per share, in late 1992. Unbeknownst to the selling shareholders, since late 1991, the appellant officers and directors had been negotiating a strategic alliance with the American Tool Company. By the time of the share buy-back, the negotiations had progressed to the point that the two companies had held numerous meetings, exchanged financial statements, anticipated a purchase of Irwin's shares for $83 to $107 per share, and executed a confidentiality agreement acknowledging that they were "evaluating a possible merger or acquisition." None of this information was disclosed to the buy-back shareholders.
Starting in December 1992, based upon information from Graves Williams, the appellant officers and directors began to purchase the now available treasury stock, at twenty-eight dollars per share. Williams stated at trial that he did not seek approval by the full board of directors before offering the stock purchases to select appellant officers and directors.
In February 1993, Irwin and American Tool publicly announced their intent to merge. In August 1993, American Tool acquired Irwin's shares at the price of $131.54 per share. The ensuing lawsuits filed in the United States District Court by the two buy-back shareholder groups resulted in a 1996 settlement in the amount of $1,095,000. As Williams noted at trial, the settlement amount was paid by and apportioned among the appellant officers and directors "based on the value of the holdings each * * * held at the time the company was sold."
In October 1993, CIC had issued a DO policy to Irwin under which individual officers and directors were indemnified against "wrongful act[s] in their respective capacities of directors and officers of the company." By virtue of the policy's terms and exclusions, CIC denied coverage for the claims made by the appellant officers and directors for reimbursement of the full amount paid in settlement of the underlying litigation. CIC then sought in the common pleas court a declaration that it was not legally responsible under its DO policy for the claims asserted by the appellant officers and directors.
Following the denial of cross-motions for summary judgment, the trial court referred the matter to a magistrate. The magistrate conducted a ten-day trial on CIC's declaratory-judgment claim, ultimately deciding in favor of CIC in June 1999. The magistrate concluded that none of the shareholder claims were covered under the DO policy. The appellant officers and directors filed objections with the common pleas court. In January 2000, after reviewing a transcript of the proceedings and the exhibits, and entertaining the arguments of counsel, the court approved and adopted the magistrate's seven-page written decision. The appellant officers and directors have appealed from this judgment under the number C-000107.
As the prevailing party in the declaratory-judgment action, CIC sought attorney fees. The magistrate denied CIC's motion. Over CIC's objection and argument, the trial court agreed with the magistrate and entered judgment accordingly on January 26, 2000. It is from this entry that CIC has brought its cross-appeal under the number C-000120.
 Directors' and Officers' Liability
In their single assignment of error, the appellant officers and directors claim that the trial court erred as a matter of law in denying coverage to them. They argue that the magistrate failed to consider evidence of the separate nature of the covered and uncovered claims that encompassed the settlement, erred in interpreting the insurance policy's terms, and erred in concluding that the repurchase of the shareholders' stock was not an authorized corporate act.
As the appellant officers and directors note, the interpretation of the terms in a contract of insurance is a question of law to be determined by the trial court. See Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus. Here, however, the gravamen of their argument is not directed to the propriety of the magistrate's legal conclusion that acts outside their corporate capacities were not covered, but instead focuses on whether the magistrate erred in weighing the evidence and in making factual determinations in the ten-day trial to support the declaration of rights in favor of CIC. See R.C. 2721.02 and 2721.10.
Our inquiry, therefore, is whether the trial court's judgment is against the manifest weight of the evidence. Judgments supported by some competent, credible evidence going to all the essential elements of the case or defense will not be reversed by a reviewing court as being against the manifest weight of the evidence. See Myers v. Garson
(1993), 66 Ohio St.3d 610, 614 N.E.2d 742; C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
In this case, where extensive trial testimony was adduced, we are guided by the principle that whether the case is "civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; see, also, Leber v. Smith (1994), 70 Ohio St.3d 548, 553, 639 N.E.2d 1159,1163. The rationale underlying this deference is that "the trier of fact is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and to use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276.
A review of the record reveals that there is some competent, credible evidence to support the conclusion that the settlements reached in the underlying litigation were for acts performed by the appellant officers and directors in their personal capacities and not in their capacities as directors and officers of the Irwin Company. There was no prior corporate approval for the purchase of the treasury stock at below book value. The settlement amounts were allocated based upon the number of Irwin shares owned by the appellant officers and directors and not upon their relative liabilities for actions taken as officers and directors. The settlement amount represented a return of the personal profit that was realized on the purchase of treasury shares from Irwin and the subsequent sale of the appreciated shares to American Tool.
From these facts, it is clear that the magistrate had ample competent, credible evidence from which to conclude that the acts for which the appellant officers and directors sought coverage were not made "in their respective capacities as directors and officers of the company," and therefore fell outside of the terms of the DO policy. The assignment of error raised by the appellant officers and directors is overruled.
 Attorney Fees and Costs
In its cross-appeal, CIC claims that the magistrate and the trial court erred in summarily denying its request for attorney fees and costs. The Declaratory Judgment Act permits a court to award, "[w]henever necessary and proper, further relief based on a declaratory judgment." R.C. 2721.09. Attorney fees are one type of "further relief" that a court may award. No authority requires that fees be awarded to a party simply because that party has prevailed in the litigation, either in part or in toto. A trial court's determination to grant or to deny a request for fees will instead not be disturbed in the absence of a demonstrable abuse of discretion. See Motorist Mutual Ins. Co. v. Brandenburg (1995), 72 Ohio St.3d 157,648 N.E.2d 488, syllabus.
Abuse of discretion implies not merely an error of judgment, but a result that is so palpably and grossly violative of fact and logic that it evinces a perversity of will, passion, prejudice, partiality, or moral delinquency. See State v. Jenkins (1984), 15 Ohio St.3d 164, 222,473 N.E.2d 264, 313. To abuse its discretion, a court must have acted unreasonably, arbitrarily, or unconscionably. See Huffman v. HairSurgeon, Inc. (1985), 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252. But if a court's exercise of its discretion exhibits a sound reasoning process to support its decision, this court will not intervene. See AAAAEnterprises, Inc. v. River Place Community Urban Redevelopment Corp. (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601.
Relying upon language from the dissenting opinion in Motorist MutualIns. Co. v. Brandenburg, 72 Ohio St.3d at 163, 648 N.E.2d at 492, CIC claims that it was entitled to fees and costs incurred to prosecute the declaratory-judgment action against its own insureds. But its argument cannot be sustained by a rationale for awarding fees that applies to aninsured when the insurer wrongfully refuses to defend in a negligence action. See, e.g., Motorist Mutual Ins. Co. v. Trainor (1973),33 Ohio St.2d 41, 294 N.E.2d 874. As the magistrate's and the trial court's decisions to deny fees and costs may be explained by a sound reasoning process, free from arbitrary influences, CIC's assignment of error is overruled.
 Conclusion
Because competent, credible evidence supports the trial court's decision that CIC is not liable under the insuring clause of the DO liability policy, and because the trial court did not abuse its discretion in denying CIC's request for fees, we affirm the judgments of the trial court.
Hildebrandt, P.J., Gorman and Sundermann, JJ.